Good morning. May it please the Court, my name is William Martin, and I have represented the plaintiff, D'Agostino Cabral, from the outset of this case. The first thing that I would like to bring to your attention is an omission on my part. After judgment was decided in this case in August of 2015, about two months later, this Court issued a decision after judgment was entered in a district court called Shamir v. City of New York. That's of the sufficiency of the plaintiff's pleading. It was my omission that I did not address that. No reason to. Pleading with respect to what? With respect to what the district court rejected as my failure to properly plead the strip search. Strip search. Yes, sir. Talking about the strip search. Strip search, yes, sir. There's a decision from this Court that I should have put in my brief. I bring it to your attention. The Towns case that the district court case relied on extensively and severely narrowing Mr. Cabral's claims, I believe was misunderstood by the district court or perhaps needs to be further clarified by this Court. The Towns case, first of all, the district court used Towns to limit, to throw out the plaintiff's state court claims for false arrest. The appellee in his briefing, to your honors, cites federal court cases that seem to suggest that the Towns applies to state court. You're talking about whether New York would follow the fruit of the poisonous tree exclusion rule? Precisely. What I'm trying to argue. What we're talking about. Yes, sir. The question with respect to the state, and that I'll ask more of the other part of your side, is does Martinez, which is a decision of a New York Court of Appeals that seems to adopt Towns, is it really the New York rule, given that before Martinez, in a series of cases, the appellate divisions went elsewhere, and since Martinez in Fecoya, the New York, the appellate divisions have still not done what Martinez seems to hold. Judge Weinstein in Cox says that the old rule is that. That's the question there, and I'd like that addressed. At most, that would mean that we would dismiss the state claims without prejudice. That's what we would do, wouldn't it? If state law is unclear, and federal law is clear, that's what we do, isn't it? Well, I guess you would now, since we've had a trial on the first part, I would submit to you that if they weren't dismissed initially, the jury would have considered those. To the extent you have any argument, it would be only on your state claims, so we would send you to state court on that, right? If that's the only claims that I prevail on before this court, yes. Why don't you answer Judge Calabresi's question? We're bound by a decision by the New York Court of Appeals, but we have these other cases before and after. What's your argument in light of Martinez? Well, my argument in light of Martinez with respect to the state court claims? Yes, sir. Is that the, I believe that the, and I cite throughout my brief, that the state courts are not agreeing with, I believe Martinez is this court, not agreeing with- No, Martinez is the New York Court of Appeals. Okay, the cases that I cite in my brief, I argue those cases to you to suggest that the court is not following Martinez, that fruit of the poisonous tree doesn't, is, I'm sorry to interrupt you. You have a number of cases before Martinez. Let's put those aside. There are a few afterwards, but they don't distinguish Martinez. And so, it's hard to know what's, what your view of New York law is. Let's start with Martinez, which controls us. How do you reconcile Martinez with allowing your case to go forward? Well, I, the only thing I could say to that today would be that the Martinez, when I read Martinez, it was more an implicit acknowledgement. It didn't come right out and say, but, and your court's decision in Towns is very clear as to what the fruit of the poisonous tree does in a civil action. All I can say today is that my reading of- In a federal court. In a federal court. And my reading of Martinez, to answer your question, is that it doesn't speak directly to the issue. By the way, you're appealing the dismissal of your federal claim, too, right? Yes, ma'am, yes, and if I could- So, did I just hear you to say that Towns, you acknowledge that Towns precludes the federal claim? I would, no, I argue, in my brief, I argue that I would ask you to overturn Towns, or at least- We can't overturn, we're bound by decisions of a prior panel. So unless we were to go in bank or something like that, Towns is binding on us. All right, well then I would ask you to distinguish my case from Towns for several reasons, facts that I can give you. Tell us how- All right, well then the Towns, in Towns, clearly to me Towns merely says that the fruit of the poisonous tree prevents the civil lawsuit if that's the basis for the lawsuit. And I'm suggesting, and that would apply in some theories in my case, but in my reply I submit a second alternative theory. That the conduct of the detective in this case, it wasn't that he just, after he recovered the marijuana, the next day he went to state court and he got a search warrant for the van that he already searched. What was the purpose of that? And at the trial, and in my- Let me ask you a different question. When your client was found with some marijuana, the amount of marijuana that was there was only 15 grams. In order for there to be probable cause to arrest under New York law, it has to be 25 grams, is that correct, under this particular? Yes, well it's a, yes, that is my position. If not, it is not an arrest, it's a ticket essentially. Yes, exactly so. Now, I take it that the position that has been taken is that when a policeman sees 15 grams, that person doesn't know whether it's 15 or 25 and that's enough to be probable cause. Now, I'm not clear what your argument is, but is your argument that the distinction between 15 and 25 is sufficiently great so that 15 doesn't give probable cause that there was 25? Is that your argument? I'm just trying to figure out what it is you're arguing. Thank you. Well, my argument is in either event, it should only be a desk appearance ticket under no circumstances, I mean- I think if it- Sorry. Judge, it's your question. If it is 25 grams, then an arrest is appropriate, isn't it? Yes. Okay, in this case- What's the test? What it turns out to be when you weigh it later or what he reasonably thinks when he sees it? Well, let me say this to you, he was never charged this particular- You're saying it's not probable cause because it was not 25 grams, is that your point? That's right. And what I'm asking is, is the test determined later when he weighs it or that somebody else weighs it, or what he reasonably could have thought at the time he observed it? Let me just make clear, at no time does the, in this record, does the detective say that he thought it was more than 25 grams and therefore that justified his conduct. He didn't do that, he never did that. Well, was the challenge in the district court that it was only 25 grams so that he would have known to come back and say, yes, I'm sorry, that it was less than 25 grams. Then he would have come back and said, yes, but I thought it was 25 grams. I mean, I didn't see that this was developed very much in the district court on the summary judgment motion. Did I miss that? No, no, I agree with you. And let me say this, the reason it wasn't developed is because it's our contention all along that that was not the issue here. All the things that he did go well above and beyond the 15 to 25 grams in the sense that he held, he took the plaintiff, he held the plaintiff, he did the strips. I think you're missing to the extent it may have been reasonable for him to think he had the crime that was 25 grams or more. Just as sometimes a seizure may be that the officer has probable cause to think it's drugs, but when the lab tests it, it's not drugs at all. That doesn't make the arrest invalid if there's probable cause. So here too, we're asking you whether or not you're disputing that it was reasonable, that he had probable cause to think it was in an amount of 25 grams or more. I want to be clear. Yes, I am disputing that. He never claims that any, and it's clearly the law of probable cause is what the officer knew at the time or had reason to believe. He never claims that he had a misdemeanor amount or a criminal amount of marijuana. That's never been the case here. All right. I know you want to reserve some time for rebuttals. Let's hear from the government on all of this and then you'll respond. May it please the court, Jeremy Schwader for appellees. Let me respond to the last set of questions first and talk about these 15 grams, 25 grams. What we have in the record, we don't know how much it was. All there is is deposition testimony from Mr. Cabral when he's asked how much marijuana did you have? He said about 13 grams. That's all we have. We don't know if that's correct. It was never measured. How does that help you because this is a warrantless and found to be unlawful to stop. How do you rely on the 25 gram or more statute without having any evidence that that was the belief? Your Honor, so my adversary never raised this issue and this is why I wasn't briefed. You raised it to us saying this would be a ground to find that he had probable cause. And where is there record evidence to support that? Your Honor, I'm going to refer to the Supreme Court case of Devenpeck versus Alford. I don't have the site in front of me, I'm sorry. Second circuit has adopted Devenpeck in, I think it's Jiggly versus Couch, which is 439 F3rd 149. And this is why these cases were never cited in the briefs, because this hasn't been developed at all. But what Devenpeck and what Jiggly both say is that for false arrest, it does not turn on whether probable cause existed to arrest the defendant for what he was eventually charged with. You don't look at what- For any arrest. What for any arrest. So what was the probable cause? That's the question that the presiding judge asked you. If you have in the record that it was 15 grams, then you can make an argument that where there is 15, an arresting officer can think it's 25 and that's probable cause. But if you don't have in the record what the amount was, it becomes more difficult to say what gave him probable cause. What gave the arresting officer probable cause? The discovery of marijuana was all that was needed for probable cause because- Any marijuana, even a trivial amount, somebody just the most obviously trivial, even though New York makes that just a ticket and not something arrestable, is probable cause to be arrested. Your Honor, so what Penal Law 220-105 says, a person is guilty of unlawful possession of marijuana when he knowingly and unlawfully possesses marijuana. So the officer had probable cause to arrest him for that charge. Now, he issued him a disappearance ticket, which is what he's supposed to do after holding him for a period of time and searching him, which he is allowed to do under the law. We briefed this in our brief. He didn't have to release him right away, particularly under the circumstances of this case when he found a large number of cash. That ticket says 220-110. So he was originally- I mean, your argument here was, to us, was that a second ground for a police that 150.75 statutory section relied on by your adversary applies only when there's no other offense alleged except 221.05, the no quantity crime. You argue that the record here indicates that the police arrested him for a 221.10 crime, which you could do a physical arrest for. And is that on the appearance ticket? Is that where it alleges 221.10? Yes, Your Honor. Okay, now, do you have to be able to say that he had probable cause for a 221.10 arrest? No, Your Honor, and this is where Davenpeck- They could write it down, they could write that, they could write anything, even if it was plainly not. They could have charged him with heroin. Well, Your Honor, this is what Davenpeck and this is what Jagley talked about. And I'm sorry that this isn't briefed here, but it's because my adversary has never raised this issue and we didn't have to brief him. You raised the issue. Well- You raised it as a ground for affirming, an alternative ground for affirming. There's two grounds, Your Honor. One is that there were multiple reasons, because he had probable cause to do this. He didn't know how much, he doesn't measure it at the time to know whether this is 13 grams, whether this is 25 grams, that would be unreasonable for him to do at that time. The second ground is that all he needs is probable cause for an arrest. And certainly, probable cause existed here because of the existence of the marijuana, which has not been challenged by my adversary. My adversary has never really challenged that there's probable cause at all in this case. Do you not agree that if the quantity would only support a 221.05 charge that he can't be physically arrested under Procedure Law 150.75? I disagree. He can't be arraigned. He can be arrested and he can be searched. He has to be released before arraignment with a desk appearance ticket. He can't be arraigned. That's what 150.75 says. So he can be brought to the station, he can be searched, and then he has to be released, and that's what happened here. I'd like to address, first of all, I don't know the Schmier case, and I wish I had seen it. I can't respond to that. I don't believe that Towns doesn't apply in this case. I don't think that my adversary has really given a reason why it shouldn't apply, and I believe it does. Yes. Yes. Given that the New York appellate divisions have not all seemed to rely on it since it existed. Thank you, Your Honor. So, I think it's important to look at the timing of this. You had Ostrover, which is the original appellate division case, which says we don't apply the fruit of the poisonous tree. Then you have Towns in 1999. Martinez comes shortly after that in 2001. 2001. Martinez in 2001. Two strong appellate division cases before Martinez that do not go with Towns and may not go with Martinez. Martinez seems to hold what you say, but in Martinez there also was actual valid evidence in that case. So that it is possible for the appellate divisions to treat Martinez not as a holding that goes that far, but saying where there was also alternative evidence. You have at least one appellate division case afterwards for Coya that stays with Ostrover. Now that might be a mistake, or it might be because they don't feel they're bound by Martinez. And we have to look to New York law. We have a decision by Judge Weinstein after Martinez in which he says Ostrover is still the law. Now does that make New York law sufficiently unclear that in a situation of doubt, we're not ruling against you, but we should dismiss without prejudice and let New York decide New York law. That's the question. Yes, and I think as this court knows, under Erie, we look to the state's highest court for what the law is. Yes, if that is the last saying on the law. But if lower courts in New York don't treat it that way, do we say, we ignore the lower courts of New York as if they don't exist? Or do we say at least that causes doubt? So I think if you look at Fecoya and a lot of the other appellate division decisions, they're all citing to Ostrover. So this is a decision in Ostrover, which happens before Towns. And then Ostrover is essentially followed over and over again without a lot of analysis. They just look to Ostrover. Yeah. Do you know, did New York appeal those appellate division cases to the Court of Appeals? Thank you, Your Honor. I know that, I can only speak to Fecoya, because that's more recent. In Fecoya, we did seek leave to appeal. The case was settled before it went up to the court. We are, my office is looking to appeal appellate division decisions, which- How about the other one? Ostrover, I can't say, Your Honor. It was a long time ago, and I'm not sure. Supreme Martinez, we're talking about the post-Martinez. Yes, that's Fecoya. That's 2014. That's the recent one. And if these cases come up again from the appellate division, we are seeking to appeal them and relying on Martinez to say this is not the law. Because we think Martinez, though there were- Why aren't you, why don't you want us to dismiss without prejudice so that you get the thing settled in New York? I mean, if what you're looking for is for New York to decide the issue, then let New York decide it. Well, this wasn't presented at all to the district court, unfortunately. Well, but the district court has to decide whether it rules on federal law only or whether the issue of the state is sufficiently in doubt that it dismisses. And actually, in your brief, you do suggest that if New York law is unclear, then you should dismiss without prejudice, that is in your brief. And I agree with that. I think if this court decides that, but we would ask this court to look to Martinez and look to the reasoning of Martinez. And you can look to Ostrover and Fecoya, too, which really don't have strong reasoning on this. I think they have a visceral reaction. But I think that Martinez is really where you can start and where you can end this analysis. And we would ask this court to say that Martinez follows towns and that's the law of New York. I do agree that if you disagree with me and you don't see eye to eye, that the alternative would be to- It's not a matter of disagreeing with you, it's whether the law of New York is sufficiently unclear that federal courts stepping in and deciding it may create something that is unjust in a situation where, assuming, you know. Usually when New York law is unclear, we consider our option of certifying the question to the New York courts. But here we're talking about something different, which is dismissing the state claim affirming only. But we have a lower court ruling that granted judgment on that. So how do you propose that we do this short of certifying the question? I mean, it seems to me the issue before us is whether we have a proper grant of summary judgment or not. Well, I think this court can make a ruling that's based on any of the facts that are here. And this is a legal question, of course, that this court can make on its own. So I would say that this court can look at Martinez and say that the law of Martinez supports- No, no, I understand and then affirm, generally. And then affirm, yes. But if we were to affirm on every other claim, let's just say for argument's sake, except the one on which you rely on Martinez. We have a grant of summary judgment. We would vacate that grant of summary judgment and leave it to New York to decide how would we do that. I want to know what you're proposing. I would propose in that case that you would remand with instructions that the court should not have exercised supplemental jurisdiction. And then should dismiss the case without, dismiss the state law claims without prejudice. The court should not have exercised supplemental jurisdiction because the New York law was sufficiently or even slightly unclear and when the law of New York is unclear, supplemental jurisdiction when everything federal has been decided is, it should not be exercised. I think that- That's the way we would do it. That would be one alternative, Your Honor, yeah. Can I come back? I'm sorry, go ahead. No, go ahead. Back to the quantity issue. Can you describe what the record shows about the physical characteristics of the marijuana? I assume it was in some sort of enclosed- I believe it was in a jar. In a jar? Yes, and beyond that, we don't have descriptions of the weight, the feel, I don't know what other physical characteristics I can provide. Yes. Do we know the size of the jar? Your Honor, I don't think that's in the record, the size of the jar. And is your point that the distinction between the two threshold amounts affects what can be charged at the charging stage and the trial stage, but does not affect the probable cause stage, is that your point? Well, that is what Devin Peck and Alford say, and that's what this court has also said in Jaguary versus Couch. You don't look to what the officer ultimately says, this is what I relied on. You look to whether there was probable cause for any arrest, to arrest for any crime. Was qualified immunity an issue in this case? Qualified immunity was brought up and was denied by the court. But this issue of the- On this point, would he be entitled to qualified immunity as a matter of law in reasonably thinking it was 25 grams? Well, I believe he would, but this was not an issue that was ever raised. So this issue about the charging has never come up in this court. But you raised it. If it's a matter of law, it's for us, isn't it? About whether qualified immunity now exists? On that point only, only on that point. I think it might be difficult without some more development in the record. To say about what was the way, there's very little in the record about the amounts. We're throwing you a life preserver, but you're throwing it back. Well, I'll take it. I have another possible life preserver, and that is, was the post-Martinez appellate division cases cited to the district court by opposing counsel? No, I- Only raised to us now. Yeah, this issue about the difference between state law and federal law was not raised. It was not raised. Well, I'll ask him, because, of course, in deciding whether the district court was wrong, we have to look at what was before the district court. So it may be that without our saying that New York law is as clear as it is, we can say that they didn't raise the issue of New York law, doubts about New York law before the court. So I'll have to ask aside. I will accept the lifeline. Thank you, Your Honor. One last question. Your adversary started his argument by citing us to a case not briefed about the strip search. Do you want to respond to that? Are you familiar with the case? Can you speak to it? I've never heard of that case. I would have liked to have heard of it before I showed up today. I'm sorry that I can't speak to that case. I will say that the strip search claim, I think, was very obviously not pled here in any way. And it's certainly, the district court was correct in finding that it would be prejudicial to allow it to be added after all the depositions were conducted. The strip search has never been a part of this case. And I'll say also that the only defendant here is Detective Thompson. Everybody else is out of this case, and my adversary hasn't appealed from the dismissal of the city of New York. Detective Thompson was not the person who did the strip search here. So he's not, it would be proper to continue this against him in either case. Thank you, your honors. All right. You're reserved two minutes. Thank you very much. Very briefly, if you look at the record, the reason that the 25 grams, 13 grams issue hasn't come up before, is if you look at the record, that piece of paper that they call a desk appearance ticket that they eventually gave to Mr. Cabral about 3 in the morning. I believe the statute that's cited in that is the public display of marijuana, not the weight of marijuana. And then if you look at the, a month later, when the detective actually, eventually- What page are you looking at? I don't have that with me. I do not have that. I understand that it charged 221.102. And 2, I think, is public display of marijuana. No, I think that's the aggregate weight over 25 grams. Okay, I may be incorrect. The other issue that I want to, like to hit on very briefly, is the, with respect to the search, I disagree, and it's covered at length on page 29 of my brief. I disagree at all that with the marijuana, there cannot be any search. There cannot be any processing whatsoever. If you can't give him the ticket at the scene, on the street, you take him back to the precinct, only if you can't figure out what his identity is, and then all you can do is give him the appearance ticket. You can't search him. I disagree with my adversary. You can't search. You can't fingerprint. You can't process that. And the case you rely on for that is? The statute itself, 15075 section one. I have two questions for you. One, did you say to the district court that after Martinez, there were cases in the appellate division that didn't follow Martinez, but followed Ostrover? Did you raise that question to the district court at all? Yes, I did, without, no mention of Martinez. But without, but there was, I'm certain that my memo of law to the district court mentions Ostrover and all the cases that follow. I don't know that it has the very, the 2014 one, the- I know there's a 2014, the question is, did you raise that case to the district court? Or did you just rely on pre-Martinez cases? It's, well, I certainly made the legal argument. To answer your question, as best I can recall, I cited post-Martinez cases. The other question I have is, with respect to the strip search, opposing counsel says the defendant in the case before us is not the one who would be responsible for the strip search. Could you answer that question? Yes, I didn't hear that. That would be absolutely incorrect. Detective Thompson admitted in his deposition that he conducted the strip search of all three of the individuals in the car. And in my motion, it's on page A118, the detective sergeant says he authorized the strip search. That's on A118. But no, Thompson himself said in his deposition, he himself strip searched all three individuals, the name defendant. Would you send us by the close of business on Wednesday copies of your brief to the state court, or I'm sorry, to the district court in which you cited post-Martinez cases so that we see that and don't have to hunt for it ourselves? Yes. All right, and also, let me ask you, I asked your adversary to refer to the strip search case that you cited here, and he was not familiar with it. Did you not supply him with a copy of that or advance notice this morning that you were going to cite a case not referenced in your brief? No, no, no, let me address that, please. No, I did not, and it was not an attempt to sandbag, I certainly would like- How did you discover the case? The problem is I discovered it a month ago in the district court, and in another case, the district court brought it to my attention. It should have been mentioned in my brief, it was not, because the decision was decided before I perfected, it was not one of those cases that you're allowed to submit to the court for its consideration, because I should have known about it. Right, so why are you citing it to us if you're saying you know you've precluded from doing it? No, I'm sorry, I'm not allowed to bring it to the court's attention as a new case. It's a case that, well, because it's the law of the district, it was an opinion of this court. I'm not going to quarrel with that, but I am somewhat troubled by the fact that you lead off citing a case that's not in the papers and not telling your adversary about it. Just as a matter of practice here, nor do you write the court in advance. You say you found it a month ago to tell us that you're going to ask us to consider it. We can agree to or not to, but you basically come and have told no one that you're going to cite. And I would urge you not to do that again. Thank you. If I could apologize to my adversary and to the court. And let me say, I would not be against any, and to any extent the court wanted to hear it from me and or my adversary about its relevance here. I absolutely understand, and it wasn't an attempt to sandbag. It's simply, as I say, it's an issue to bring to your attention, the law of this circuit that I- Well, you did give us a cite and didn't argue what you thought its relevancy was. So why don't you tell us in one sentence how you think it helps your argument so that we know exactly what you think is the relevancy of the case. Yes, the case speaks to the lack of, the Shamir case speaks to the lack of precision. In the plaintiff's counsel's pleadings, exactly what claims he's seeking relief from in his complaint. And the- Tell us how you think it helps you. Well, thank you. The decision overturned a ruling of the district court and allowed a claim to go forward. In that case, the Shamir case, the claim, according to the record, wasn't at all developed until the motions were already submitted. In my case, the strip search claim was found to have not been mentioned in my pleadings, but it was litigated at length through the case. Thank you very much. All right, we're going to take the case under advisement. Thank you, folks.